**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: POST-JUDGMENT SUBPOENA OF PAO TATNEFT TO QUINN EMANUEL URQUHART & SULLIVAN, LLP<br><br>regarding the United States District Court for the Southern District of New York case of<br><br>PAO TATNEFT,<br><br>       Petitioner,<br><br>  v.<br><br>UKRAINE,<br><br>       Respondent. | Misc. Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF PAO TATNEFT'S**
**MOTION TO COMPEL COMPLIANCE WITH POST-JUDGMENT SUBPOENA**

**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
(212) 344-5400

*Attorneys for Judgment Creditor PAO Tatneft*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................3

     A.    The Arbitration Award, $172.9 Million Judgment Against Ukraine, And Affirmance Of The Judgment On Appeal ...........................................3

     B.    Tatneft's Post-Judgment Discovery To Ukraine And The District Court's Grant Of Tatneft's Motion To Compel ...............................................4

     C.    The Bank Subpoena Cases In This District And This Court's Denial Of Ukraine's Motion To Quash Tatneft's First Set Of Bank Subpoenas ...................4

     D.    Tatneft's Second Set of Bank Subpoenas And Ukraine's Second Motion to Quash...........................................................................................5

     E.    Vacatur Of The Moratorium On Discovery And Discovery-Related Proceedings In The Bank Subpoena Cases ..........................................6

     F.    Ukraine Again Moves To Quash The Bank Subpoenas And For A Confidentiality Order .............................................................................6

     G.    The Subpoena To Quinn Emanuel And Quinn Emanuel's Refusal To Comply .....7

ARGUMENT.................................................................................................................8

I.    THE COURT SHOULD COMPEL QUINN EMANUEL TO PRODUCE THE SUBPOENAED DOCUMENTS...........................................................................8

     A.    Legal Standards: Scope of Discovery Under Rules 45 And 69 And Allocation Of Burdens On A Motion To Compel .......................................8

     B.    The Subpoenaed Documents Are Relevant To Discovering Ukraine's Assets And Proportional To The Enforcement Of Tatneft's $172.9 Million Dollar Judgment ...................................................................................11

          1.    *Documents and information identifying accounts and correspondent banks used by Oschadbank are relevant and proportional* .....................11

          2.    *Documents and information identifying accounts and assets held by Ukraine are relevant and proportional* ..................................................13

     C.    Quinn Emanuel's Objections Concerning The Bank Subpoena Cases And D.C. Case Cannot Justify Its Refusal To Comply With The Subpoena...............14

     D.    Quinn Emanuel's Assertion That Tatneft Should Pursue Discovery From Other Parties Before Subpoenaing A Law Firm Is Meritless...............................16

     E.    Quinn Emanuel's Objection Concerning Immunity From Attachment And Execution Under The FSIA Is At Odds With Supreme Court Precedent ............18

     F.    Quinn Emanuel's Objections To Producing Information Located "Outside Of The United States" But Otherwise Within Its Control Is Meritless................19

i

G.    Quinn Emanuel's Objections Based On Privilege And Confidentiality Are Non-specific, Unsupported, And Likely Meritless................................................20

H.    Quinn Emanuel's Objections Based On Unspecified State Secrecy And Bank Secrecy Laws Are Unsupported And Insufficient To Block The Requested Discovery..........................................................................................................22

I.    Tatneft Has Offered To Enter Into An Appropriate Confidentiality Agreement To Safeguard Any Sensitive Information...........................................22

CONCLUSION....................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Art Bd., Inc. v. Worldwide Bus. Exch. Corp.*,
    510 N.Y.S.2d 973 (N.Y.C. Civ. Ct. 1986)...........................................................................17

*Avalon Holdings Corp. v. Gentile*,
    Case No. 18-cv-7291 (DLC) (RWL), 2025 WL 1463038 (S.D.N.Y. May 22, 2025) ........16, 21

*Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*,
    Case No. 01-cv-9649 (JFK), 2006 WL 3456521 (S.D.N.Y. Nov. 30, 2006)...........................9

*Boller v. Barulich*,
    557 N.Y.S.2d 833 (N.Y.C. Civ. Ct. 1990)...........................................................................17

*Bridgeport Music Inc. v. UMG Recordings, Inc.*,
    No. 05-cv- 6430 (VM) (JCF), 2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007) ........................11

*Copalcor Mfg. (pty) Ltd. v. Meteor Indus. Inc.*,
    Case No. 87-cv-1612 (ERK), 1988 WL 52194 (E.D.N.Y. May 16, 1988)..............................20

*EM Ltd. v. Republic of Argentina*,
    695 F.3d 201 (2d Cir. 2012) ..................................................................................9, 12, 16

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983)................................................................................................12

*Gujarat State Petroleum Corp. Ltd. v. Republic of Yemen*,
    Case No. 19-mc-0547 (RA), 2022 WL 1567464 (S.D.N.Y. May 18, 2022)......................9, 13

*HK Cap. LLC v. Rise Dev. Partners LLC*,
    74 Misc. 3d 1201(A), 157 N.Y.S.3d 919 (Sup. Ct. Kings Ctny. 2022) ...................................17

*In re Nassau Cnty. Grand Jury (Doe Law Firm)*,
    4 N.Y.3d 665 (2005) ..............................................................................................21

*In re Republic of Kazakhstan for an Ord. Directing Discovery from Clyde & Co. LLP Pursuant
to 28 U.S.C. sec.,1782*,
    110 F. Supp. 3d 512 (S.D.N.Y. 2015)...................................................................................19

*Lefcourt v. U.S.*,
    125 F.3d 79 (2d Cir. 1997) .....................................................................................21

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
    130 F.R.D. 25 (S.D.N.Y. 1990) ..............................................................................21

*Magnaleasing, Inc. v. Staten Island Mall*,
   76 F.R.D. 559 (S.D.N.Y. 1977) ........................................................................21

*Moller v. West 128th Street L.P.*,
   No. 655336/2021, 2024 WL 3330191 (Sup. Ct. N.Y. Co.. July 8, 2024) ...............................17

*Omnicare, Inc. v. Strategic Delivery Sols., LLC*,
   No. 20-MC-734 (PKC), 2021 WL 321849 (S.D.N.Y. Feb. 1, 2021)......................................10

*Owens v. Republic of Sudan*,
   Case No. 01-cv-2244 (JDB), 2020 WL 4039302 (D.D.C. July 17, 2020) ..............................10

*Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC*,
   Case No. 20-cv-00936 (JGK) (RWL), 2021 WL 621226 (S.D.N.Y. Feb. 17, 2021) ..........9, 13

*Republic of Argentina v. NML Capital*,
   573 U.S. 134 (2014) ............................................................................... 10, 18

*Res. Grp. Int'l Ltd. v. Chishti*,
   Case No. 25-cv-1021 (JSR), 2025 WL 2636993 (S.D.N.Y. Sept. 12, 2025) ...........................16

*Riddell Sports Inc. v. Brooks*,
   158 F.R.D. 555 (S.D.N.Y. 1994) ......................................................................15

*S.E.C. v. Sassano*,
   274 F.R.D. 495 (S.D.N.Y. 2011) .................................................................16, 21

*Samsung Elecs. Co. v. Microchip Tech. Inc.*,
   347 F.R.D. 252 (S.D.N.Y. 2024) ......................................................................11

*Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*,
   Case No. 21-cv-9472 (JGK) (KHP), 2022 WL 3704001 (S.D.N.Y. Aug. 26, 2022) ..............19

*Stati v. Republic of Kazakhstan*,
   No. 19-mc-00382 (PAE), 2024 WL 3442663 (S.D.N.Y. July 17, 2024)................................10

*U.S. Bank Nat. Ass'n v. APP Int'l Fin. Co.*,
   100 A.D.3d 179 (1st Dep't 2012) ......................................................................9

*von Bulow by Auersperg v. von Bulow*,
   811 F.2d 136 (2d Cir. 1987) ..........................................................................20

**Rules**

Fed. R. Civ. P 45...........................................................................................10, 21

Fed. R. Civ. P 45(d)(2)(B)(i) ................................................................................................1

Fed. R. Civ. P 69(a)(2)................................................................................... 1, 2, 8, 16

Petitioner PAO Tatneft ("Tatneft") respectfully submits this memorandum of law, together with the declaration of Channing Turner, Esq., dated February 18, 2026 ("Turner Decl."), with exhibits, in support of its motion under Federal Rules of Civil Procedure 45(d)(2)(B)(i) and 69(a)(2) for an order compelling Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") to comply with a post-judgment subpoena duces tecum, dated August 28, 2025 (the "Subpoena"). A copy of the Subpoena is attached to the Turner Decl. as Exhibit G.

## PRELIMINARY STATEMENT

Tatneft seeks to enforce a post-judgment subpoena to judgment-debtor Ukraine's counsel, Quinn Emanuel, which may have information relevant to identifying property of Ukraine potentially subject to execution.  The firm has previously represented Ukraine in litigation and currently represents Ukraine's 100% state-owned bank, the Joint Stock Company State Savings Bank of Ukraine ("Oschadbank") as the plaintiff in an action pending in the United States District Court for the District of Columbia.  The Subpoena avoids privileged information and targets only information that could reveal the location of the judgment debtor's assets. None of the objections advanced by Quinn Emanuel justifies or excuses the firm's non-compliance. The Court should therefore direct Quinn Emanuel to produce all responsive documents.

The Subpoena seeks information that lies within the heartland of judgment enforcement discovery, material that is not subject to different rules for a sovereign judgment debtor.  It contains just eight requests.  Request Nos. 1 through 5 seek information concerning Oschadbank, which as a 100% state-owned bank likely handles Ukrainian assets and/or accounts.  Request Nos. 6 through 8 request information concerning any accounts from which Ukraine has paid Quinn Emanuel and any property Quinn Emanuel may hold on Ukraine's behalf—information that judgment creditors like Tatneft are unequivocally entitled to receive.

Rule 69(a)(2) allows a judgment creditor to obtain discovery in aid of execution from "any person," including the debtor's law firm, and authorizes "broad inquiry to discover hidden or concealed assets." *See* Parts I.A. and I.D, *infra*. To the extent a debtor's current or prior counsel has information concerning the debtor's assets, the case law correctly rejects the notion that a debtor may shelter non-privileged information concerning its assets in possession of its lawyer.

To date, Quinn Emanuel has refused to comply with the Subpoena in any way, primarily because Quinn Emanuel asserts that other proceedings in this District concerning separate subpoenas excuse its compliance and should be resolved to Quinn Emanuel's unilateral satisfaction first. In particular, Quinn Emanuel incorrectly asserts that a "moratorium on discovery" is in place while ignoring Magistrate Judge Netburn's order dated May 2, 2025, that lifted the then-stay of post-judgment discovery—before Tatneft issued the Subpoena to Quinn Emanuel.

Quinn Emanuel's position has no merit for several reasons. First, Quinn Emanuel has cited no authority that excuses compliance with the Subpoena simply because the firm believes other proceedings should be resolved first. Tatneft's January 2021 judgment against Ukraine has remained unpaid for more than five years, and Ukraine has transparently adopted a strategy of obstruction-by-litigation. Quinn Emanuel may not add to the obstruction with unjustified objections to basic asset discovery.

Second, the information Tatneft seeks from Quinn Emanuel—such as the name of correspondent banks used by Oschadbank and identification of financial accounts and assets of Ukraine—is materially different from the information that Tatneft seeks in the bank subpoena cases in which Ukraine's motion to quash is pending. In the bank cases, Tatneft seeks, among

other things, information concerning transactions occurring within Ukraine's accounts, which Ukraine has claimed, based on vague generalities, may implicate its national security if such information is produced to Tatneft. But concerns over transaction-level information are not present here. The Subpoena to Quinn Emanuel requests only "documents sufficient to identify" sources of payment and accounts. National security arguments provide no basis for withholding mere account numbers, and Tatneft has already offered to enter into a reasonable confidentiality agreement. As shown below, Quinn Emanuel's other objections also fail to justify its noncompliance.

Accordingly, Tatneft respectfully asks this Court to compel Quinn Emanuel to fully comply to the Subpoena within 20 days of entry of the Court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Arbitration Award, $172.9 Million Judgment Against Ukraine, And Affirmance Of The Judgment On Appeal

Tatneft commenced arbitration against Ukraine on December 11, 2007, under the United Nations Commission on International Trade Law Arbitration Rules, seeking relief for breaches by Ukraine of an international, bilateral investment treaty. *See* Turner Decl. Exh. A (Arbitration Award) ¶ 6. The panel held Ukraine liable for breaches of the international agreement and awarded Tatneft US $112 million, plus interest, on July 29, 2014. *Id.* ¶ 642. Tribunals in France and the United Kingdom rejected Ukraine's attempts to overturn the Award. *See* Turner Decl. Exh. B, June 19, 2021 Order Denying Ukraine's Motion to Quash in 21-mc-00376, ECF No. 16 ("Order Denying Motion To Quash"), at 2.

Tatneft brought a petition to confirm the arbitration award in the U.S. District Court for the District of Columbia (the "D.C. Court"). The D.C. Court granted the petition in August 2020 and entered judgment in the amount of $172,910,493.00 (the "Judgment"). *See* Turner Decl.

Exh. C (Judgment).  Ukraine then moved to stay execution of the Judgment, which the D.C.

Court denied.  Order Denying Motion To Quash at 3.  In denying the motion, the Court found

that "Ukraine has been actively avoiding satisfaction of the Judgment" and "has not proffered

anything to demonstrate its willingness to pay the Judgment." *Id*.

**B.    Tatneft's Post-Judgment Discovery To Ukraine And The District Court's Grant Of Tatneft's Motion To Compel**

Following entry of the Judgment, Tatneft "commenced discovery in aid of execution,

including [by serving on Ukraine] interrogatories and requests for production of documents." *See*

Turner Decl. Exh. D (D.C. Court's Order Granting Tatneft's Motion To Compel) at 2.  When

Ukraine failed to produce documents or engage in a meet and confer to discuss its objections to

the discovery, Tatneft moved to compel and for costs and fees.  *Id*. at 3-4.

The D.C. Court rejected all of Ukraine's objections and granted Tatneft's motion to

compel and awarded costs and fees.  *See id*. at 17-18.  It concluded by

> reiterating that Ukraine has and continues to stonewall Pao Tatneft in its efforts, first, to obtain a Judgment in this Court, and now, to enforce the Judgment entered by this Court. … Accordingly, Pao Tatneft is entitled to discovery of Ukraine's worldwide assets, discovery of assets that may ultimately be immune from execution, and discovery from state-controlled entities or persons purporting to act for or on behalf of Ukraine, where such entities may have information about Ukraine's assets or hold assets that are attachable.

*Id*. at 18.

**C.    The Bank Subpoena Cases In This District And This Court's Denial Of Ukraine's Motion To Quash Tatneft's First Set Of Bank Subpoenas**

In March 2021, Tatneft notified Ukraine it intended to serve subpoenas on 25 nonparty

financial institutions located in the Southern District of New York (the "First Set of Bank

Subpoenas").  *See* Turner Decl., Exh. B (Order Denying Motion To Quash), at 3.  The subpoenas

sought information concerning (i) accounts maintained outside the territory of Ukraine that are

owned in whole or in part by Ukraine or used by Ukraine (requests 1-3), and (ii) securities

4

offerings outside the territory of Ukraine in which Ukraine was or will be seller or issuer (requests 4-7). Ukraine moved to quash, arguing that the subpoenas sought information that was overbroad, irrelevant, confidential, and that disclosure "would violate various foreign laws" and "offend principles of international comity." Order Denying Motion To Quash at 5.

The Court (Hon. Netburn, M.J.) denied Ukraine's motion. *See generally id.* The Court determined that the information sought "is proportional to the need to satisfy a $172.9 million judgment." *Id*. at 9. The requested information "has the potential to reveal assets that might be available to satisfy the substantial judgment against Ukraine," and Ukraine "has not shown any particularized reason to quash these subpoenas much less the 'clear and definite' injury necessary." *Id.*

Judge Koeltl affirmed the Court's order. *See* ECF No. 27 in Case No. 21-mc-00376. Among other things, the District Court held that the Magistrate Judge correctly recognized that the subpoenas fell within the "broad sweep" of post-judgment discovery "because the subpoena requests were limited to information that related to the judgment debtors, their assets, or suspected transfers." *Id.* at 8. The District Court explained that "seek[ing] asset discovery from third parties, including banks," "even in cases involving sovereign entities," is consistent with the "broad post-judgment discovery in aid of execution [that] is the norm in federal and New York state courts." *Id*. at 9.

### D.    Tatneft's Second Set of Bank Subpoenas And Ukraine's Second Motion to Quash

On January 25, 2022, Tatneft notified Ukraine that it would serve 52 additional subpoenas on financial institutions the ("Second Set of Bank Subpoenas"). The document requests contained in second set of subpoenas were identical to those in the initial subpoenas. Nevertheless, on

February 8, 2022, Ukraine moved to quash the second set of subpoenas, thereby commencing

Case No. 1:22-mc-00036 (together with Case No. 1:21-mc-00376, the "Bank Subpoena Cases")

### E.    Vacatur Of The Moratorium On Discovery And Discovery-Related Proceedings In The Bank Subpoena Cases

On March 4, 2022, the parties jointly moved for a "moratorium on discovery and all

related proceedings" in this Court "due to the war in Ukraine."  ECF No. 56 in 21-mc-00376.

The Court granted the motion the same day.  ECF No. 57 in 21-mc-00376.

On May 2, 2025, Magistrate Judge Netburn granted Tatneft's motion to vacate the

discovery moratorium.  The Court concluded that because Ukraine had exhausted its appeals and

there was "no future event for which posting a security would protect Tatneft," a continued stay

would be "inconsistent with Rule 62's purpose."  *See* Turner Decl. Exh. F (ECF No. 108 in 1:21-

mc-00376) at 2.  The Court also determined that "Ukraine has not established good cause to

maintain the stay" under Rule 26(c).  *Id.*[1]

### F.    Ukraine Again Moves To Quash The Bank Subpoenas And For A Confidentiality Order

In response to Ukraine's stated intention of moving again to quash the Bank Subpoenas

and for a confidentiality order, the Court set a briefing schedule and precluded Tatneft from

enforcing the Bank Subpoenas while the motions are pending.  *See* ECF No. 114 in 1:21-mc-

00376 (JGK) (SN) (Netburn, M.J.); ECF No. 117 in 1:21-mc-00376 (JGK) (SN) (Netburn, M.J.).

---

[1] Also in March 2022, the parties jointly moved for, and the Court granted, a moratorium on party discovery in the D.C. District Court, also "due to the war in Ukraine."  ECF Nos. 104, 105 in 1:17-cv-00582-CKK (D.D.C.). That moratorium remains in place after the court ordered, on December 10, 2025, that Tatneft's motion to vacate the moratorium be "held in abeyance," despite the Court recognizing that a continued stay of discovery was not authorized by Rule 62 and failing to identify any other basis for continuing a non-consensual post-judgment stay of discovery in the absence of a bond.  *See* ECF No. 127 in 1:17-cv-00582-CKK (D.D.C.), at 12.

Ukraine's motion to quash the Second Set of Bank Subpoenas and second motion to quash the First Set of Bank Subpoenas were fully briefed as of October 13, 2025, and its motion for a confidentiality order was fully briefed as of September 22.  All three motions remain pending. Although Ukraine styled its motions as seeking to quash the Bank Subpoenas, it conceded that "records concerning Ukraine's ordinary accounts in the United States do admittedly have probative value, and their disclosure is less likely to threaten national security." *See* ECF No. 120 in 21-mc-00376 at 11.  Ukraine's motions thus seek only to narrow the Bank Subpoenas.[2]

### G.    The Subpoena To Quinn Emanuel And Quinn Emanuel's Refusal To Comply

Tatneft served the Subpoena on Quinn Emanuel via the New York Secretary of State pursuant to Section 121-1505 of the Partnership Law on September 9, 2025.  *See* Turner Decl. Exh. H.  Tatneft subpoenaed Quinn Emanuel due to the law firm's previous work for Ukraine in litigation concerning Ukraine's default on certain debt owed to the Russian Federation, *see* Subpoena Ex. B (September 1, 2018 press release by Quinn Emanuel concerning its work for Ukraine), and its current representation of Ukraine's 100% state-owned bank, Oschadbank, in litigation against the Russian Federation in the District of Columbia District Court, *see* Subpoena Ex. A (copy of the docket report in *Joint Stock Company State Savings Bank of Ukraine v. Russian Federation*, Case Number 1:23-cv-00764-ACR (D.D.C.)).

The Subpoena contains eight document requests. Request Nos. 1 through 3 seek information sufficient to identify Oschadbank's correspondent banks and accounts it has used to make payments to Quinn Emanuel. The requests are narrowly tailored to target only documents

---

[2] In November 2025, Ukraine filed a motion to quash three additional subpoenas served by Tatneft after the court vacated the discovery moratorium, which was fully briefed as of December 15, 2025.  *See generally* ECF Nos. 18-25 in 25-mc-00212.

"sufficient to identify" these banks and accounts. Request No. 4 seeks documents "sufficient to identify" property held by Oschadbank outside Ukraine in which Ukraine has or claims an interest, again, a narrow formulation that seeks to identify the judgement debtor's property located internationally. Request No. 5 seeks documents concerning Oschadbank's corporate governance, information that bears on the alter ego analysis. Finally, Request Nos. 6 through 8 seek documents "sufficient to identify" accounts Ukraine used to make payments to the law firm or that may hold property in which Ukraine claims an interest. *See generally* Subpoena at 7-9, Turner Decl., Exh. G.

In response to each Subpoena request, Quinn Emanuel responded that it "does not anticipate producing documents." *See* Turner Decl. Exh. I. Counsel for Tatneft and Quinn Emanuel conferred by telephone on October 2, 2025, during which Quinn Emanuel maintained its refusal to produce documents on the ground that, in Quinn Emanuel's opinion, the information requested was related to information Tatneft sought in the Bank Subpoena Cases that Ukraine had opposed releasing to Tatneft. *Id.* at ¶¶ 11-12. Quinn Emanuel also pointed to the stay of post-judgment discovery in the D.C. Court but did not explain why a stay of post-judgment discovery against the judgment-debtor in another district prevented Tatneft from conducting discovery against the law firm here—particularly when post-judgment discovery was and is proceeding in this District against other third parties. *Id.* ¶ 12.

## ARGUMENT

## I.    THE COURT SHOULD COMPEL QUINN EMANUEL TO PRODUCE THE SUBPOENAED DOCUMENTS

### A.    Legal Standards: Scope of Discovery Under Rules 45 And 69 And Allocation Of Burdens On A Motion To Compel

Under Federal Rule of Civil Procedure 69(a)(2), "[i]n aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment

debtor—as provided in these rules or by the procedure of the state where the court is located.""[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014); *see also, e.g.,* Order Denying Motion To Quash, at 7 (same).   "Precisely because discovery to enforce a judgment is employed to discover assets of a recalcitrant judgment debtor, judgment creditors must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC*, Case No. 20-cv-00936 (JGK) (RWL), 2021 WL 621226, at *2 (S.D.N.Y. Feb. 17, 2021) (internal quotation marks and citation omitted); *Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*, Case No. 01-cv-9649 (JFK), 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006) ("[E]ven if the discovery request is a fishing expedition, . . . this Court recognized long ago that a judgment creditor is entitled to fish for assets of the judgment debtor." (internal quotation marks and citation omitted)); *U.S. Bank Nat. Ass'n v. APP Int'l Fin. Co.*, 100 A.D.3d 179, 183 (1st Dep't 2012) (observing that New York's "public policy is to put no obstacle in the path of those seeking to enforce a judgment" (internal quotation marks and citation omitted)).   The law grants judgment creditors the freedom to pursue a "broad inquiry" into the location of a judgment debtor's assets. *See Phoenix Bulk Carriers*, 2021 WL 621226, at *2.

In the context of post-judgment subpoenas, "even in cases where the assets of foreign sovereigns are implicated, courts have regularly concluded that 'the presumption should be in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets.'" *Gujarat State Petroleum Corp. Ltd. v. Republic of Yemen*, Case No. 19-mc-0547 (RA), 2022 WL 1567464, at *8 (S.D.N.Y. May 18, 2022) (citation omitted).   Although the

Foreign Sovereign Immunities Act ("FSIA") protects certain assets of foreign sovereigns from attachment and execution, the Supreme Court in *Republic of Argentina v. NML Capital* held that the FSIA does not limit post-judgment discovery only to assets subject to attachment and execution. *See* 573 U.S. 134, 145 (2014) (rejecting Argentina's "self-serving legal assertion" that asserts are immune from execution before discovery can take place and affirming lower court's allowance of discovery concerning such assets); *Stati v. Republic of Kazakhstan*, No. 19-mc-00382 (PAE), 2024 WL 3442663, at *4 (S.D.N.Y. July 17, 2024) ("In [*NML Capital*], the Supreme Court held that the FSIA does not categorically limit post-judgment discovery to potentially executable assets."); *Owens v. Republic of Sudan*, Case No. 01-cv-2244 (JDB), 2020 WL 4039302, at *4 (D.D.C. July 17, 2020) ("[W]hether an asset is subject to execution does not determine whether information about that asset is discoverable." (citing *NML Capital*, 573 U.S. at 144)); Turner Decl., Exh. D (D.C. Court order granting Tatneft's motion to compel), at 5, 10-11 ("Ukraine cites no case where a district court has simply accepted the foreign state's assertions of execution immunity for military or consular property to prohibit discovery of that property," and ruling that "Ukraine's conclusory allegations of potential immunity" are "insufficient to bar discovery of the existence and location of Ukraine's assets").

Rule 45 provides the mechanism for compelling production of relevant discovery from third parties. "Under Rule 45, Fed. R. Civ. P., parties may obtain discovery from nonparties, so long as the information [is] relevant to the claims and defenses and proportional to the needs of the case." *Omnicare, Inc. v. Strategic Delivery Sols., LLC*, No. 20-MC-734 (PKC), 2021 WL 321849, at *2 (S.D.N.Y. Feb. 1, 2021) (granting motion to compel and denying motion to quash because subpoena "seeks relevant information and is not overbroad or burdensome in violation of Rule 26") (cleaned up). Once the moving party on a motion to compel demonstrates that the

10

information "sought in the subpoena [is] relevant and proportional to the needs of the case . . .

the burden then shifts to the party opposing discovery to show that the information sought is . . .

unduly burdensome." *Samsung Elecs. Co. v. Microchip Tech. Inc.*, 347 F.R.D. 252, 260

(S.D.N.Y. 2024) (cleaned up); *see also Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05-

cv- 6430 (VM) (JCF), 2007 WL 4410405, at *3 (S.D.N.Y. Dec. 17, 2007) (granting motion to

compel compliance with subpoena to lawyer for documents relevant to lawyer's intent in using

certain contractual term in agreement at issue in case).

**B.      The Subpoenaed Documents Are Relevant To Discovering Ukraine's Assets
          And Proportional To The Enforcement Of Tatneft's $172.9 Million Dollar
          Judgment**

The documents requested in the Subpoena are relevant to locating Ukraine's assets and

proportional to the needs of enforcing a $172.9 million dollar judgment that Ukraine has vowed

not to pay.

*1.      Documents and information identifying accounts and correspondent
         banks used by Oschadbank are relevant and proportional*

Oschadbank is 100% owned by judgment-debtor Ukraine.  *See* Notes to the Interim

Condensed Consolidated Financial Statements or the Six Months ended 30 June 2025, at Note 1

("As at 30 June 2025 and 31 December 2024, 100% of the Bank's shares were owned by the

state represented by the Cabinet of Ministers of Ukraine.").[3]  While no factual predicate is

needed to justify the Subpoena, it is likely that Ukraine uses Oschadbank for one or more

banking functions. Request Nos. 1, 2, 3, and 4 of the Subpoena seek information relevant to

Oschadbank's banking functions and are not burdensome.

---

[3] Available at https://www.oschadbank.ua/en/finansova-zvitnist (last accessed February 18,
2026).

Identification of overseas banks Oschadbank uses as correspondent banks (No. 1) may reveal banks also used by Ukraine and from which to seek information about Ukraine's accounts and activity. Identification of accounts used by Oschadbank (Nos. 2 and 3) to make payments to Quinn Emanuel will shed light on financial institutions that may also do business with Ukraine. It is even possible that Ukraine plays a role in funding the Oschadbank Action, which seeks to enforce an arbitration award against the Russian Federation.  Either way, identification of accounts being used to pay Quinn Emanuel for its work in the Oschadbank Action may lead to discovery of accounts owned by Ukraine or disclosure of financial institutions from which to seek additional discovery.

The requests are narrowly drawn to seek only documents "sufficient to identify" banks and accounts, thereby avoiding burdening the non-party with collecting "all" documents relating to the request.

Request No. 4, in investigating property held by Oschadbank outside of Ukraine in which Ukraine has an interest, typifies standard post-judgment discovery. *See EM Ltd.*, 695 F.3d at 207 ("It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets."). Such a request is directly relevant to locating Ukraine's assets and should be uncontroversial.

Request No. 5 seeks information concerning Oschadbank's corporate governance and structure, facts that bear on Oschadbank's potential alter ego liability, a standard subject for post-judgment discovery.  *See First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba,* 462 U.S. 611, 630-633 (1983) (separate juridical status of state-owned entity may be disregarded in interests of justice and entity held liable for foreign state's obligations).  Given Ukraine's history of political meddling in state-owned entities in general and Oschadbank in particular, there is no

basis for declaring, as a matter of law *ex ante*, that the requested documents are not relevant.[4]
The well-delineated categories of the request do not extend further than necessary in probing
factors relevant to the undeniably relevant alter ego analysis.

### 2. *Documents and information identifying accounts and assets held by Ukraine are relevant and proportional*

The remaining requests seek information about Ukraine's assets—again, the heartland of
post- judgment discovery. Request No. 6 calls for documents sufficient to identify the source of
any payment made to Quinn Emanuel by or on behalf of Ukraine.  A source of payments directly
reflects the location of the assets used to make the payment and is therefore directly relevant to
Tatneft's judgment enforcement.  *See Gujarat State Petroleum*, 2022 WL 1567464, at *8 (noting
that information about a sovereign judgment-debtor's asserts "may be gleaned by discovering
information about the Central Bank's accounts").

Request Nos. 7 and 8 seek information about any accounts in which Quinn Emanuel
holds property belonging to Ukraine or in which Ukraine claims an interest, including retainers
or other funds maintained for potential payment of fees or the proceeds of any litigation or
settlement.  This information, too, which goes to the location of Ukraine's assets, is within the
heartland of post-judgment discovery.  *See Phoenix Bulk Carriers*, 2021 WL 621226, at *2
("[J]udgment creditors 'must be given the freedom to make a broad inquiry to discovery hidden
or concealed assets of the judgment debtor'" (citation omitted)).

---

[4] *See, e.g.*, Constant Meheut and Kim Barker, *Zelensky's Government Sabotages Oversight, Allowing Corruption to Fester*, N.Y. Times Dec. 5, 2025; Sevki Acuner, et al., *The NBU's decision to disqualify five of Oschadbank's newly elected Supervisory Board members is an unprecedented challenge to the corporate governance reform in state-owned banks*, Oschadbank Press Center Aug. 8, 2019, both attached as Exhibits J and K to Turner Decl.

The three requests are proportional to the needs of enforcing the Judgment as they seek information about the location of Ukraine's assets, and the identification of accounts does not impose a significant burden.

**C.      Quinn Emanuel's Objections Concerning The Bank Subpoena Cases and D.C. Case Cannot Justify Its Refusal To Comply With The Subpoena**

In its written objections and subsequent discussions, Quinn Emanuel has maintained that it will not comply with the Subpoena because, in its view, the requests implicate proceedings against Ukraine in the Bank Subpoena Cases and the District of Columbia.  *See* Turner Decl. ¶¶ 11-12, Exh. I at 3 (General Objections No. 2-3).  But Quinn Emanuel has never identified any legal or other basis for this objection or explained how it might excuse the firm's compliance with the Subpoena.

For example, Quinn Emanuel asserts a general objection that the requests violate "certain orders issued by the Southern District of New York in *Ukraine v. PAO Tatneft*, Docket Nos. 21-mc-00376 . . . and 22-mc-00[0]36 . . . which impose a moratorium on discovery."  *See* Turner Decl. Ex. H at 3 (General Objection Nos. 2).  Quinn Emanuel cites several docket entries from those cases, including the Court's May 2, 2025 Order that *granted* Tatneft's motion to *lift* the stay of discovery in those cases.  *See* Turner Decl. Ex. F ("Tatneft's motion to lift the stay of discovery is GRANTED.").  Quinn Emanuel's assertion that a moratorium on discovery persists while citing the very Order that lifted that moratorium is frivolous and serves only to obstruct.

The Court in the Bank Subpoena Cases issued subsequent orders precluding Tatneft from enforcing the Bank Subpoenas against their recipients pending Ukraine's motion for a confidentiality order, *see* ECF No. 114 in 1:21-mc-00376-JGK-SN (Netburn, M.J.); ECF No. 117 in 1:21-mc-00376-JGK-SN (Netburn, M.J.), but nothing in the Court's orders prevents Tatneft from serving and enforcing additional post-judgment discovery—which in this case

seeks distinct information—on other parties that may hold information relevant to enforcing the Judgment.

Although post-judgment discovery in D.C. against Ukraine remains stayed pending a substantive ruling on Tatneft's motion to lift the stay of discovery, Quinn Emanuel has not identified any authority preventing Tatneft from pursuing post-judgment discovery of entirely different documents against third parties in this District now.  In fact, case law supports allowing Tatneft to continue discovery in this District despite a stay of a discovery seeking a different universe of documents from a different party. *See Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 561 (S.D.N.Y. 1994) ("To the extent that there is a legitimate basis for pursuing discovery in this case, it is irrelevant that the same discovery may be stayed in [a different] action. These are two independent, if overlapping, actions, and a discovery stay in one has no effect on the other."). Indeed, the Bank Subpoena Cases and Ukraine's motion to quash three additional subpoenas are proceeding notwithstanding the stay in the D.C. court, further reflecting the lack of any basis to bar Tatneft from pursuing discovery in aid of execution in this District.

To the extent Quinn Emanuel may assert that Tatneft is seeking the same information from it that it also seeks in the Bank Subpoena Cases, Quinn Emanuel is mistaken.  In the Bank Subpoena Cases, Ukraine has moved for a confidentiality order because, it says, disclosure of its financial transaction information reflected in the account records held by banks and other financial institutions will impact its national security.  But Tatneft does not seek from Quinn Emanuel records that would reveal transactions within Ukraine's accounts, let alone transactions that could have any conceivable connection to Ukraine's national security interests. Instead, Tatneft seeks account-identifying information for accounts or other sources used to pay Quinn Emanuel, that may shed light on other accounts connected to Ukraine, or that may hold assets

belonging to Ukraine.  The fact that Ukraine's state-owned bank pays its lawyers to litigate a commercial case in Washington, D.C. cannot be a state secret.

Moreover, all of the Subpoena requests seek only "[d]ocuments sufficient *to identify*" information, not exhaustive productions of all documents.  *See* Subpoena at 7-9 (Request Nos. 1-8) (emphasis added).  Mere identification of an account number, the institution where it is maintained, and the account holder is materially different from a listing of transactions within an account.  Nothing suggests that mere identification of Ukraine's accounts used to pay Quinn Emanuel or to hold retainers or settlement proceeds will have any impact on Ukraine's military or national security.  And that Ukraine, never shy about moving to quash subpoenas, has not moved against the Quinn Emanuel subpoena belies any claim that national security secrets could be at stake.

### D.    Quinn Emanuel's Assertion That Tatneft Should Pursue Discovery From Other Parties Before Subpoenaing A Law Firm Is Meritless

Federal Rule of Civil Procedure 69(a)(2) allows post-judgment discovery "from any person."  *See EM Ltd.*, 695 F.3d at 207 (collecting cases permitting discovery from various entities).  This includes law firms, and courts in New York have frequently enforced post-judgment subpoenas issued to a debtor's current or former law firms.  *See, e.g.*, *Res. Grp. Int'l Ltd. v. Chishti*, Case No. 25-cv-1021 (JSR), 2025 WL 2636993, at *3-4 (S.D.N.Y. Sept. 12, 2025) (upholding post-judgment subpoena requests to the current and former law firms of the debtor that sought "documents broadly concerning the financial relationship between [the debtor] and the subject firm"); *Avalon Holdings Corp. v. Gentile*, Case No. 18-cv-7291 (DLC) (RWL), 2025 WL 1463038, at *2-5 (S.D.N.Y. May 22, 2025) (denying motion for a protective order sought by a judgment debtor's former lawyers and requiring the lawyers to respond to a subpoena from judgment creditor); *S.E.C. v. Sassano*, 274 F.R.D. 495, 496 (S.D.N.Y. 2011)

16

(ordering a law firm that currently represented a judgment debtor to respond to judgment enforcement subpoena from the S.E.C.); *Moller v. West 128th Street L.P.*, No. 655336/2021, 2024 WL 3330191, at *2 (Sup. Ct. N.Y. Co. July 8, 2024) (ordering law firm to respond to judgment creditor's subpoena that sought information on, among other things, any bank accounts in which debtor had an interest, the source of payments to the law firm, and all assets of the debtors' of which the law firm was aware); *HK Cap. LLC v. Rise Dev. Partners LLC*, 74 Misc. 3d 1201(A), 157 N.Y.S.3d 919 (Sup. Ct. Kings Co. 2022) (directing law firm to comply with subpoena seeking information about the judgment debtor's assets, bank accounts, and any asset transfers); *Boller v. Barulich*, 557 N.Y.S.2d 833, 837 (N.Y.C. Civ. Ct. 1990) (directing attorney to answer questions posed in post-judgment enforcement subpoena as to amount of attorney's fees paid by judgment debtor and who paid them); *Art Bd., Inc. v. Worldwide Bus. Exch. Corp.*, 510 N.Y.S.2d 973, 974-75 (N.Y.C. Civ. Ct. 1986) (directing judgment debtor's attorney to answer, on pain of contempt, questions related to property the attorney held for debtor in escrow and attorney's retainer or fee arrangement with debtor).

Quinn Emanuel does not dispute that it worked for the judgment debtor and has responsive information concerning it.  Nor does Quinn Emanuel deny that it has responsive information concerning the judgment debtor's assets and/or Oschadbank's accounts and correspondent banks.  The firm has not cited any authority requiring that a judgment creditor seek information about a judgment debtor's assets from other sources before subpoenaing the debtor's law firm.  As the numerous cases cited above show, law firms are routinely compelled to disclose information about payments made to them and a judgment debtor's assets regardless of whether other sources might hypothetically have such information.

**E.      Quinn Emanuel's Objection Concerning Immunity From Attachment And Execution Under The FSIA Is At Odds With Supreme Court Precedent**

Quinn Emanuel objects to the Subpoena on the ground that it seeks information about property "not located in the United States and not used for a commercial activity in the United States or otherwise immune from attachment and execution pursuant to the [FSIA]." *See* Turner Decl. Exh. H at 4 (General Objection No. 6). This same line is repeated in its specific objections, so as to object to each request "to the extent [the request] seeks information regarding Accounts or property immune from attachment and execution." *See, e.g.*, *id.* at 11 (Response No. 6).

Over the course of Tatneft's efforts to discover Ukraine's assets, this objection has been repeatedly rejected in the D.C. proceeding and the Bank Subpoena Cases because it is squarely foreclosed by Supreme Court precedent. In *NML Capital,* the Supreme Court rejected Quinn Emanuel's argument "that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property." *NML Capital*, 573 U.S. at 145. The whole reason for the Subpoena is that Tatneft "does not yet know what property [Ukraine] has and where it is, let alone whether it is executable under the relevant jurisdiction's law." *Id.* It does not matter that the Subpoena "is bound to turn up information about property that [Ukraine] regards as immune" because Tatneft "may think the same property not immune" in which case "the District Court will have to settle the matter" based on the information turned up in discovery. *Id.* Thus, *NML Capital* precludes Quinn Emanuel's argument that the Subpoena can be rejected because it might lead to the production of documents related to unspecified assets that may be determined to be immune from execution at some point in the future.

**F.    Quinn Emanuel's Objections To Producing Information Located "Outside Of The United States" But Otherwise Within Its Control Is Meritless**

Quinn Emanuel's General Objection No. 12 appears to assert an objection to producing "documents or information that is not within its knowledge, possession, custody, or control *in the United States*." Turner Decl. Ex. H at 5 (emphasis added). The wording of this objection suggests that Quinn Emanuel proposes to categorically withhold information held outside the United States, such as at its London office.

The law, however, requires that Quinn Emanuel produce information regardless of whether the information is physically located at its office in the United States or an office outside the United States so long as Quinn Emanuel has the practical ability to obtain the information. *See Signify Holding B.V. v. TP-Link Rsch. Am. Corp.*, Case No. 21-cv-9472 (JGK)(KHP), 2022 WL 3704001, at *2 (S.D.N.Y. Aug. 26, 2022) ("Courts in the Second Circuit follow the so-called 'practical ability' standard; that is, a party has 'possession, custody, or control' over a document if it has the practical ability to obtain and produce the documents. . . . In some cases, this means that a corporate party has the practical ability to obtain and produce documents held by a parent, subsidiary, or sister corporation."); *cf. In re Republic of Kazakhstan for an Ord. Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (rejecting a law firm's argument that a distinction between its London and New York offices mattered in the context of discovery in aid of a foreign tribunal). Tatneft is not aware of any authority allowing a U.S. entity to withhold information simply because it is stored, for example, in that entity's London office. Given that the requested documents are likely to be electronically stored and accessible without regard to national borders, the objection is even less well founded and should be overruled.

19

**G.    Quinn Emanuel's Objections Based On Privilege And Confidentiality Are Non-specific, Unsupported, And Likely Meritless**

In its general and specific objections, Quinn Emanuel repeatedly objects on the basis of privilege, asserting that "[t]o the extent any of the documents Tatneft seeks are in the possession of Quinn Emanuel, they are in the firm's possession only because they were shared with Quinn Emanuel in connection with a client of the firm obtaining legal advice." *See, e.g.*, Turner Decl. Ex. H at 2-3 (General Objection No. 1). Quinn Emanuel provides no factual support for this statement. But even assuming the statement is factually true, it does not follow that the information is privileged. On the contrary, numerous cases have held that the type of information Tatneft seeks here—factual information on assets and financial accounts—is not privileged or otherwise protected from disclosure to a judgment creditor.

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (quotation marks and citation omitted). Conclusory assertions of privilege do not satisfy that burden. *See Copalcor Mfg. (pty) Ltd. v. Meteor Indus. Inc.*, Case No. 87-cv-1612 (ERK), 1988 WL 52194, at *2 (E.D.N.Y. May 16, 1988); *see also* Local Civil Rule 26.2 (requiring an answer to "any means of discovery or disclosure" that asserts a claim of privilege to identify specific information that substantiates the privilege). Quinn Emanuel has failed in the first instance to *prima face* substantiate the privilege with a privilege log or any other particularized and required information. It has therefore failed to meet its burden of showing that any privileged information is implicated by the Subpoena. The Subpoena on its face makes clear that no such privileged information is requested.

In any event, privilege does not protect information concerning assets of Ukraine and Oschadbank that are in Quinn Emanuel's possession or the accounts they used to pay Quinn

20

Emanuel, unless those things were the object of the legal advice sought. "[T]he client is not

entitled to shield information which the client has provided to the attorney not in confidence, as

the factual basis for the request for legal advice, but only as incidental to the establishment of the

relationship." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 130 F.R.D. 25, 25 (S.D.N.Y.

1990) (surveying case law before compelling disclosure of a client's address). "It is well settled

that information regarding payment of attorneys' fees by a client is not covered by the attorney-

client privilege absent special circumstances." *Avalon Holdings Corp. v. Gentile*, Case No. 18-

cv-7291 (DLC) (RWL), 2025 WL 1463038, at *2 (S.D.N.Y. May 22, 2025) (quoting S.*E.C. v.

Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011)); *see Lefcourt v. U.S.*, 125 F.3d 79, 86 (2d Cir.

1997) ("[A]s a general rule, a client's identity and fee information are not privileged."); *In re

Nassau Cnty. Grand Jury (Doe Law Firm)*, 4 N.Y.3d 665, 679 (2005) ("[I]nformation about fees

paid by the client are not generally protected under the privilege, nor are communications

regarding the payment of legal fees by a third person." (internal quotation marks and citation

omitted)).

Similarly, neither attorney-client privilege nor the work product doctrine shields

documents concerning the payment of settlement proceeds or retainers held by a law firm for its

client. *See Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 563 (S.D.N.Y. 1977)

(rejecting claims of attorney-client privilege and work product protection and compelling

disclosure of a settlement agreement). Nor can Quinn Emanuel refuse to reveal such information

based on client confidentiality or professional ethics, as Federal Rule of Civil Procedure 45

"constitutes a 'law' that requires [lawyers] to reveal the allegedly confidential client information

. . . absent a valid basis for objection." *Sassano*, 274 F.R.D. at 497.

**H.** **Quinn Emanuel's Objections Based On Unspecified State Secrecy And Bank Secrecy Laws Are Unsupported And Insufficient To Block The Requested Discovery**

Quinn Emanuel also objects on the basis that Tatneft is "seek[ing] information protected by state secrecy and bank secrecy laws." But Quinn Emanuel fails to name any law that would prevent it from disclosing any of the requested information. The numerous cases cited above compelling production of similar information from law firms further indicates there is no such bar. Nor has Quinn Emanuel explained why it is a proper party to assert such an objection.

**I.** **Tatneft Has Offered To Enter Into An Appropriate Confidentiality Agreement To Safeguard Any Sensitive Information**

To the extent that Quinn Emanuel objects to the production of confidential or sensitive information, Tatneft has already offered to enter a confidentiality agreement that appropriately safeguards sensitive information. While Quinn Emanuel has not identified any information it deems sensitive, any agreement could incorporate attorneys'-eyes-only protections if the parties deem them necessary.

Tatneft made such an offer during the parties' meet and confer. *See* Turner Decl. ¶ 13. Quinn Emanuel declined to discuss the matter at that time. *Id.* The offer nevertheless remains open, and confidentiality concerns should not otherwise impede the production of responsive information.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should grant Tatneft's motion to compel in its entirety and order Quinn Emanuel to produce all documents responsive to the Subpoena's document requests within 20 days of entry of the Court's order.


Dated:  February 19, 2026
         New York, New York

22

Respectfully submitted,

**SCHLAM STONE & DOLAN LLP**

_/s/ Elizabeth Wolstein_
Elizabeth Wolstein
John Moore
Channing J. Turner
26 Broadway, 19th Floor
New York, New York 10004
Telephone: (212) 344-5400
ewolstein@schlamstone.com
jmoore@schlamstone.com
cturner@schlamstone.com

*Attorneys for Judgment Creditor PAO Tatneft*